1  TOWNSEND AND TOWNSEND AND CREW LLP
   PAUL W. VAPNEK   (State Bar No. 36576)
2  JUDITH M. SCHVIMMER   (State Bar No. 230285)
   Two Embarcadero Center, 8th Floor
3  San Francisco, California  94111
   Telephone:  (415) 576-0200
4  Facsimile:  (415) 576-0300
   pwvapnek@townsend.com
5  jmschvimmer@townsend.com

6  Attorneys for Plaintiff
   SUNSET MOUNTAINS, INC., d/b/a
7  MOSAIC TILE MARKET

8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12 SUNSET MOUNTAINS, INC., d/b/a MOSAIC        Civil Action No. C 07 4007 (PJH)
   TILE MARKET. a California corporation,
13

14            Plaintiff,
                                              **FIRST AMENDED COMPLAINT
15        v.                                  FOR DECLARATORY JUDGMENT
                                              AND DAMAGES**
16 MOSAIC TILE SUPPLIES, LLC, a Texas
   limited liability company,                 DEMAND FOR JURY TRIAL
17
              Defendant.
18

19        Plaintiff Sunset Mountains, Inc., d/b/a Mosaic Tile Market ("Mosaic") alleges:

20        1.      This is a civil action seeking injunctive relief and damages for misrepresentation of

21 copyright claims under the Digital Millennium Copyright Act ("DMCA"); for Intentional Interference

22 with Prospective Business Relationships; for unfair competition arising under the Federal Trademark

23 Act of 1946 (the "Lanham Act"), 15 U.S.C. §§ 1052 *et seq*.; for unfair competition under Cal. Bus. &

24 Prof. Code §§ 17200 *et seq*.; for unfair competition arising under the common law of the state of

25 California; and for declaratory relief.  Defendant is misusing its intellectual property rights to unfairly

26 compete with Plaintiff, and Defendant's conduct is likely to continue to result in irreparable injury to

27 Plaintiff.

28

**PARTIES**

2.    Plaintiff Mosaic is a California corporation having its principal place of business at 54 Old El Pueblo Road, Suite C, Scotts Valley, California 95066.

3.    Defendant Mosaic Tile Supplies, LLC ("MTS") is a Texas limited liability company having its principal place of business at 100 Anthony Lane, Coldspring, Texas 77331.

**JURISDICTION**

4.    This is an action for declaratory judgment brought under the Declaratory Judgment Act, 28 U.S.C. § 2201, for the purpose of determining actual questions of controversy between the parties. The claims alleged herein arise under the Lanham Act and Copyright Act, 15 U.S.C. § 1051 *et seq.* and 17 U.S.C. § 501 *et seq*, respectively. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1338.

5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because a substantial part of the events giving rise to the claims alleged herein occurred in this District, and the Defendant is subject to personal jurisdiction in this District.

**INTRA-DISTRICT ASSIGNMENT**

6.    This action arises in Santa Cruz County, where a substantial part of the events or omissions which give rise to the claims alleged herein occurred and in which a substantial part of the property that is the subject of the action is located.

**MOSAIC'S BUSINESS**

7.    Mosaic is an online tile showroom and store. Rebecca Lonergan and David Bousfield started the company in 2003 after being frustrated with the difficulty of finding colorful glass tile designs in a timely manner and at a reasonable price for their own home remodeling projects.

8.    Ms Lonergan and Mr. Bousfield used their experience gained from high-tech careers in the Silicon Valley to build a web business to expand the marketplace and audience for a product traditionally sold through "brick and mortar" physical locations.

9.    Mosaic is advertised as "Your Online Tile Showroom." Glass, steel, porcelain, and cork tile products are housed in a warehouse in California and shipped to consumers throughout the U.S. and Canada. The business aims to provide unique products at reasonable prices with immediate

1  availability. Its consumers, homeowners and tradespeople, purchase its products for use in kitchens,

2  pools, baths, fountains, walls, restaurants and hotels, as well as for resale to other end consumers.

3     10.    Mosaic purchases its supplies from a number of different suppliers, including

4  Defendant MTS. Mosaic sells some products under the brand name of the supplier, and it brands and

5  sells other products under its own name and marks (a common practice sometimes called "re-

6  branding"). All of Mosaic's branding activities have been and are expressly authorized by the

7  appropriate supplier, although not required by law.

8     11.    Mosaic does not produce a printed catalogue. Its products are offered solely through its

9  online catalogue and through a growing number of resellers.

10                    **DEFENDANT'S THREATS AND CLAIMS**

11    12.    Mosaic has been purchasing tile from MTS for resale for nearly four years. Except for

12  a non-disclosure agreement, there has never been any written agreement defining their relationship, a

13  relationship which has been both that of MTS as a wholesaler and Mosaic as one of its resellers, as

14  well as the two having been direct competitors.

15    13.    Mosaic is not and has never been the exclusive reseller of MTS, and MTS is not the

16  exclusive supplier for Mosaic. Further, Mosaic and MTS never entered into an agreement by which

17  MTS would be the exclusive supplier for Mosaic.

18    14.    Mosaic is not and has never been the "West Coast Distributor" for MTS. MTS has

19  alleged in conversation, letters and emails that Mosaic is or was the exclusive distributor for MTS

20  products in the western part of the United States. Despite this claim, MTS has competed with Mosaic

21  for jobs on the west coast, and MTS often does business in the region in which it claims Mosaic has

22  "exclusive" distribution rights.

23    15.    Defendant MTS asserts exclusive rights in the photographs of certain tiles and/or tile

24  designs, ("Defendant's Photograph Copyrights"). MTS owns four U.S. Trademark Registrations for

25  the marks ILLUMINATI® (U.S. Trademark Registration No. 3246410), PRISM® (U.S. Trademark

26  Registration No. 3193206), KALEIDOSCOPE® (U.S. Trademark Registration No. 3111617), and

27  ALCHEMY® (U.S. Trademark Registration No. 3164829) (collectively, "Defendant's Trademarks").

28    16.    Initially, Mosaic marketed and sold the products purchased from MTS under

Sunset Mountains, Inc., d/b/a Mosaic Tile Market v. Mosaic Tile Supplies, LLC    Civil Action No. C 07 4007 (PJH)    3
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

1   Defendant's Trademarks and using Defendant's Photograph Copyrights. MTS approved of such use,

2   and MTS mirrored this action by using on its own website photographs protected by copyright and

3   belonging to Mosaic ("Mosaic's Photograph Copyrights"). The professional relationship between the

4   parties was amicable and successful, with Mosaic being MTS's largest reseller.

5       17.     As its business grew, Mosaic sought permission from MTS to sell products purchased

6   from MTS under Mosaic's own brands. MTS had advance knowledge of this standard practice and

7   gave its express spoken and written permission. Mosaic has never re-branded any product from MTS

8   without MTS's permission.

9       18.     Mosaic is informed and believes that MTS decided to change its policy regarding

10  resellers' use of Defendant's Trademarks and Photograph Copyrights in or about the last quarter of

11  2006.

12      19.     On or about January 3, 2007, a telephone conference call took place at MTS's direction

13  among the two principals of MTS, Haleigh and Randall Stallworth, and the two principals of Mosaic,

14  Ms Lonergan and Mr. Bousfield. The purpose of the call was to discuss the parties' ongoing business

15  relationship. During the call, MTS asked Mosaic for several pieces of confidential and/or sensitive

16  business information, requests made particularly inappropriate by the parties' status as sometimes

17  competitors. MTS raised the issue that Mosaic had purchased less from MTS in 2006 than in 2005,

18  and MTS voiced its belief that Mosaic must be purchasing less due to the dual causes of acquiring

19  product from other suppliers as well as not having success with its sale of products under its own

20  brand.

21      20.     Also during the January 3 telephone conference, Mosaic informed MTS that it was now

22  purchasing glass tile directly from the factory instead of purchasing MTS's PRISM® line of tile.

23  Mosaic also confirmed that it did acquire tile from other suppliers as well as from MTS, a practice

24  which is standard and not in violation of any agreement or understanding between the parties.

25      21.     On January 18, 2007, MTS sent an email to Mosaic in which it expressed concern with

26  Mosaic's website and its marketing of its MODWALLS™ product. MTS requested that Mosaic alter

27  its website to add a notice of trademark ownership with respect to Defendant's Trademarks. MTS's

28  request was explicit in its directions, instructing that on the page where Mosaic lists its own pending

1   and registered trademarks, it was to "include a listing of our marks used on your site and the

2   ownership rights notice to MTS, LLC." Mosaic and MTS had a clear agreement that Defendant's

3   Trademarks were to be identified as belonging to MTS, LLC and not to the long form Mosaic Tile

4   Supplies, LLC.

5        22.    Mosaic immediately complied with MTS's request and added notice of ownership by

6   MTS of the trademarks KALEIDOSCOPE ®, KALEIDOSCOPE® COLORWAYS, AURA™,

7   LYRIC™, PRISM®, and ILLUMINATI®, the only of Defendant's Trademarks or unregistered

8   trademarks to appear on the website at or subsequent to that time. Mosaic spent many hours

9   addressing MTS's concerns.

10       23.    A second telephone conference took place between Messrs. Stallworth and Bousfield

11  on or about January 25, 2007, for the purpose of discussing outstanding issues between the two

12  companies. During this call, Mr. Stallworth demanded that Mosaic enter into a formal reseller

13  agreement, but never defined the terms or presented an agreement for discussion. The demand was

14  repeated in a January 27, 2007 email from MTS to Mosaic. Mosaic and MTS never entered into a

15  formal or informal reseller agreement.

16       24.    Also during the January 25 telephone call, Mr. Bousfield informed Mr. Stallworth that

17  the issues between the two companies were unlikely to be resolved and stated that he did not think

18  Mosaic could continue to buy product from MTS.

19       25.    On January 30, 2007, MTS sent Mosaic an email in which they request further changes

20  to Mosaic's website and inquire as to whether Mosaic planned on reselling MTS products pursuant to

21  a negotiated and executed reseller agreement.

22       26.    Mosaic responded by email on January 31, 2007, and inquired as to an outstanding

23  prepaid order of tile which Mosaic had purchased from MTS but had not received (the "Prepaid

24  Order").

25       27.    MTS responded by email on February 2, 2007, and confirmed that the Prepaid Order

26  was in transit. MTS also reiterated its question regarding the proposed (but not presented) reseller

27  agreement.

28       28.    Mosaic replied promptly on February 5, 2007, to inform MTS that it was

1  uncomfortable with the tone of communications between the parties and that Mosaic wished to take

2  some time to evaluate their business options and plans.

3          29.    The next day, February 6, 2007, Mosaic received a letter (Exhibit A) from counsel for

4  MTS. The letter demanded that Plaintiff contact Defendant and work out a reseller agreement in

5  72 hours.  The letter stated that if an agreement were not reached within 72 hours, Mosaic must

6  provide proof that it was promptly deleting all reference to MTS products from its websites and sales

7  literature "to avoid being sued for copyright and trademark infringement."  The letter does not address

8  how Mosaic is to sell its remaining inventory, including the Prepaid Order, without making reference

9  to MTS products.

10         30.    On February 23, 2007, Plaintiff was notified by email from an agent of Network

11  Solutions, Mosaic's website hosting provider for its websites located at www.mosaictilemarket.com

12  and www.modwalls.com, that a DMCA "Take Down Demand" had been issued at the behest of MTS

13  ("DMCA Notice").  Exhibit B.  The DMCA Notice was issued pursuant to a February 16, 2007 letter

14  from MTS counsel to Monster Commerce, LLC (which is owned by Network Solutions).  Exhibit C.

15         31.    The DMCA Notice was issued on a Friday, and it allowed Mosaic forty-eight

16  (48) hours to remove all allegedly infringing copyrighted material of MTS or have its website

17  immediately disabled.

18         32.    Mosaic spent a significant amount of time and money removing the alleged

19  copyrighted material from its websites that weekend.  It quickly realized that many of the images

20  attached to the DMCA Notice were not Defendant's Photograph Copyrights, but rather Mosaic's own

21  Photograph Copyrights. Despite the inaccuracy of MTS's list of infringing images, and despite the

22  fact that Mosaic was an authorized MTS reseller with express permission by MTS to use Defendant's

23  Photograph Copyrights in the sale of products purchased through MTS, Mosaic removed all of the

24  images.  It did so solely due to the threats of litigation and of having its website - its only business

25  portal - disabled indefinitely.

26         33.    Mosaic also removed Defendant's Trademarks from its websites at the same time.  It

27  took this action pursuant to MTS's letter of February 6, in which it threatened litigation for trademark

28  and copyright infringement if Mosaic did not remove all references to MTS.  Mosaic informed MTS

1    that it had complied with MTS's demands.

2        34.    MTS responded through its counsel on Sunday, February 25, informing that MTS did

3    not want Mosaic to remove Defendant's Trademarks, only Defendant's Photograph Copyrights. MTS

4    requested that Defendant's Trademarks be restored.

5        35.    On March 8, 2007, counsel for MTS emailed counsel for Mosaic to inform it that MTS

6    would deliver the Prepaid Order and that MTS insisted that Mosaic sell it under Defendant's

7    Trademarks. Mosaic was reluctant to accept the Prepaid Order because of the predicament MTS had

8    created through its contrary insistence that Mosaic continue to use Defendant's Trademarks - but not

9    Defendant's Photograph Copyrights - to sell the remainder of the order, despite MTS's threats to bring

10   suit if Mosaic continued to use Defendant's Trademarks.   Mosaic felt that there was an end in sight to

11   the increasingly contentious relationship between the parties, so it took the time to change its websites

12   so that all MTS products again carried Defendant's Trademarks.  In the interest of avoiding further

13   dispute, Mosaic did not insist on its legal right to re-brand the product and instead offered the new

14   shipment for sale solely under the MTS trademarks.

15       36.    Mosaic has been diligently removing MTS products and categories from its website as

16   products stocks sell out.  Only a small quantity of MTS product remains in stock.

17       37.    Despite compliance with its demands, new counsel for MTS sent a letter to Mosaic on

18   June 7, 2007, informing it that Mosaic had failed to comply with the "conditions" of receiving the

19   Prepaid Order. By way of example, the letter accuses that Mosaic has not complied with MTS's

20   demands because Mosaic identifies Defendant's Trademarks as belonging to MTS, LLC, instead of to

21   Mosaic Tile Supplies, LLC - despite the prior written authorization of January 18 for Mosaic to

22   identify Defendant's Trademarks in exactly that manner. The letter erroneously refers to an exclusive

23   supplier relationship between the parties, and it threatens legal action if the parties don't reach

24   agreement within five (5) days.  Exhibit D.

25       38.    The June 7 letter imposed a collection of new demands on Mosaic, despite the reality

26   that Mosaic was selling the remainder of its MTS inventory and trying to terminate the relationship as

27   expeditiously as possible.  The letter demands that, "[t]o avoid being named in a lawsuit and exposed

28   to a judgment for substantial damages," Mosaic must take a number of steps, including (once again!)

1   the removal of all references to MTS products from Mosaic's website - despite the fact that Mosaic

2   still had and has the legal right to sell its remaining product, and despite that fact that Mosaic had

3   removed these references months prior and then added them again at MTS's behest - and asking for an

4   accounting of Mosaic's gross income, a letter to all Mosaic customers informing them of Mosaic's

5   alleged misuse of Defendant's Trademarks, and payment of all attorneys fees and costs.

6       39.    Mosaic responded to MTS's letter through counsel on July 2.  Exhibit E.  Mosaic

7   addressed each point raised in the June 7 letter and concluded with an assurance of Mosaic's diligent

8   efforts to market and sell the MTS products quickly so that Defendant's Trademarks could be

9   removed entirely from Mosaic's websites.  Mosaic promised to address all reasonable proposals to

10  allow it to continue to sell out the remaining inventory in a reasonable business manner.

11      40.    MTS responded to this request for a reasonable resolution with letters on July 24 and

12  31 asking for Mosaic's inventory accounting and sales records, each comprising sensitive business

13  information.  The July 24 letter charges Mosaic with violating "the license agreement," and the July

14  31 letter again threatens legal action.

15      41.    Mosaic responded through counsel with a July 31 letter asking for clarification of the

16  alleged license agreement and its terms, as no license agreement has ever existed between the parties.

17  Mosaic also noted that MTS continues to use Mosaic Photograph Copyrights on MTS's websites,

18  despite Mosaic's previous requests that MTS remove the images.

19      42.    MTS responded on August 1, 2007.  Exhibit F.  In this letter, counsel claims that the

20  licensing agreement "was established through the relationship of the parties," without giving further

21  clarification as to how the parties' relationship constituted a license and without indicating the terms

22  of the license which Mosaic was allegedly violating.  MTS further claims that MTS has removed all

23  photos or images taken by Mosaic, but MTS has not removed all such images.

24      43.    MTS continues to feature photographs taken by customers at Mosaic's request and for

25  consideration.  MTS also continues to wrongfully advertise that Mosaic is its distributor or subsidiary.

26  The two companies briefly entered into an informal partnership before their relationship deteriorated,

27  by which they jointly purchased the domain name www.mosaicsupply.com.  After approximately two

28  months, Mosaic determined that it was not interested in the target "craft and artist" market, and it sold

1   its interest in the domain and website to MTS. Despite Mosaic's repeated requests, MTS continues to

2   list Mosaic's name and contact information on MTS's website under MTS's "Contact Information"

3   despite the lack of affiliation between Mosaic and the website. There is no indication to consumers

4   that Mosaic is an independent company, and a reasonable visitor to the website would conclude that

5   Mosaic is simply the California office of MTS. Exhibit G.

6       44.    MTS's letter of August 1 concludes thusly, "Our client is no longer interested in

7   settling this matter. Our client has directed us to prepare a complaint to be filed in the United States

8   District Court for the Southern District of Texas. Our next communication will be service of this

9   complaint."

10      45.    Based on MTS's repeated and unfounded accusations of copyright and trademark

11  infringement, MTS's continuous threats of litigation over the same, its intentional interference with

12  Mosaic's contractual relationships through its forced alteration of Mosaic's websites and its demand

13  that Mosaic inform its customers of its alleged misuse of MTS's intellectual property, MTS's unfair

14  business competition, and MTS's wrongful use of the DMCA to force Mosaic to remove permitted

15  images used on its website in connection with the sale of products purchased through MTS, and in

16  light of the fact that Mosaic needs to continue to use MTS's Trademarks to sell its remaining

17  inventory, an actual dispute exists between the parties.

18
19
20
                    **FIRST CLAIM FOR RELIEF**
            **Declaratory Relief - Noninfringement of Copyright**
                        **17 U.S.C. § 501**

21      46.    Mosaic realleges and incorporates by reference the allegations contained in paragraphs

22  1-45 above.

23      47.    In light of MTS's claim of infringement by Mosaic of MTS's purported copyrighted

24  designs, Mosaic has a reasonable belief and imminent fear that MTS intends to file suit against Mosaic

25  for copyright infringement under 17 U.S.C. § 501. Mosaic denies any and all claims of liability for

26  such alleged violations.

27      48.    MTS wrongly seeks to prosecute against a permitted use of its copyright for

28  competitive reasons and it knowingly misused its copyright rights to do so.

1    49.    Mosaic has not engaged in any acts with knowledge that such acts may infringe MTS's

2    rights.

3    50.    An actual, justiciable controversy exists between the parties with respect to the alleged

4    liability of Mosaic under 17 U.S.C. § 501.

5    51.    A judicial declaration pursuant to §§ 2201 and 2202 of Title 28 of the United States

6    Code is necessary and appropriate at this time so that Mosaic may ascertain its rights and duties with

7    respect to its sale of the products purchased through MTS.

8
9
10

**SECOND CLAIM FOR RELIEF**
**Declaratory Relief - Noninfringement of Trademark**
**15 U.S.C. § 1125(a)**

11    52.    Mosaic realleges and incorporates by reference the allegations contained in

12    paragraphs 1-51 above.

13    53.    In light of MTS's claim of infringement of its trademarks, Mosaic has a reasonable

14    belief and imminent fear that MTS intends to file suit against Mosaic for trademark infringement

15    under 15 U.S.C. § 1125(a).  Mosaic denies any and all claims of liability for such alleged violations.

16    Mosaic's use of Defendant's Trademarks in connection with products purchased through Defendant is

17    not likely to cause confusion, to cause mistake or to deceive the consuming public as to the source,

18    origin, affiliation or sponsorship of the goods.

19    54.    Mosaic has not engaged in any acts either with knowledge that such acts infringe

20    MTS's rights or with the intent to cause confusion or mistake, or to deceive the consuming public.

21    55.    An actual justiciable controversy exists between the parties with respect to the alleged

22    liability of Mosaic under 15 U.S.C. § 1125(a).

23    56.    A judicial declaration pursuant to §§ 2201 and 2202 of Title 28 of the United States

24    Code is necessary and appropriate at this time so that Mosaic may ascertain its rights and duties with

25    respect to its sale of the products purchased through MTS.

26
27
28

Sunset Mountains, Inc., d/b/a Mosaic Tile Market v. Mosaic Tile Supplies, LLC    Civil Action No. C 07 4007 (PJH)    10
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

**THIRD CLAIM FOR RELIEF**
**Misrepresentation of Copyright**
**17 U.S.C. § 512(f)**

57.    Mosaic realleges and incorporates by reference the allegations contained in paragraphs 1-56 above.

58.    Upon information and belief, Mosaic's use of Defendant's Copyrights does not infringe any copyright owned by MTS due to MTS's express permission for Mosaic to make such use.

59.    Upon information and belief, MTS knew or should have known that Mosaic's use did not infringe any of its copyrights on the date it sent the DMCA complaint to Network Solutions.

60.    Accordingly, MTS violated 17 U.S.C. § 512(f) by knowingly materially misrepresenting that the Mosaic use infringed its copyrights.

61.    As a direct and proximate result of MTS's actions, Plaintiff has been injured substantially and irreparably.  Such injuries include but are not limited to the financial and personal expense associated with responding to the DMCA complaint.

**FOURTH CLAIM FOR RELIEF**
**Intentional Interference With Prospective Business Relationships**

62.    Mosaic repeats and realleges each of the allegations contained in Paragraphs 1 through 61 as though fully set forth herein.

63.    Mosaic had longstanding and profitable business relationships with customers and resellers who locate and purchase Mosaic's goods, including goods carrying Mosaic's brands or the wholesaler's brands, through its websites, as well as longstanding and profitable business relationships with wholesalers and manufactures of tiles.

64.    Mosaic expected its business relationships with its customers and suppliers in and beyond California to continue in the future.  MTS was aware of Mosaic's business relationships with these customers, resellers, and suppliers.

65.    MTS deliberately interfered with Mosaic's prospective business relationships with these online customers, resellers, and suppliers by issuing a wrongful DMCA take-down notice to Mosaic's website host and therefore forcing Mosaic to remove lawful and allowed website content

1  that is necessary or significant for the promotion and sale of its products.  As a result of MTS's

2  wrongful conduct, Mosaic was unable to provide full product information for its customers, resellers,

3  and suppliers throughout California and the country.

4        66.    MTS further deliberately interfered with Mosaic's prospective business relationships

5  by forcing Mosaic to accept and sell-through the Prepaid Order of tile using MTS's trademarks to

6  promote and sell the product, only to then threaten litigation over that exact trademark use on which

7  they insisted.  In doing so, MTS has continued to threaten Mosaic's business and publicly damage its

8  reputation in the industry.

9        67.    As a direct and proximate result of this tortuous interference, Mosaic has suffered, and

10  will continue to suffer, damages in an amount yet to be fully determined, but in any event well in

11  excess of the jurisdictional requirements of this Court.

12        68.    MTS's conduct as set forth herein was purposeful, malicious and undertaken in

13  conscious disregard of the rights of Mosaic.  Accordingly, Mosaic is entitled to an award of punitive

14  damages.

15

16                            **FIFTH CLAIM FOR RELIEF**

17                           **Federal Unfair Competition**
   
                            **(15 U.S.C. § 1125(a))**

18

19        69.    Mosaic repeats and realleges each of the allegations contained in Paragraphs 1 through

20  68 as though fully set forth herein.

21        70.    MTS's acts as alleged herein constitute, among other things, false designations of

22  origin, false or misleading descriptions of fact, or false or misleading representations of fact which are

23  likely to cause mistake or confusion, or to deceive the public as to the origin, sponsorship, or approval

24  of the goods and services of Defendant, and otherwise misrepresents the nature and qualities of the

25  parties' goods.

26        71.    The public and Mosaic has been or is likely to be damaged by such false

27  misrepresentations in violation of 15 U.S.C. § 1125(a)(1).

28        72.    As a direct and proximate result of Defendant's conduct as herein alleged, Mosaic and

1  the public have suffered and will continue to suffer irreparable injury.

2       73.    Further, as a result of MTS's unfair competition, Mosaic has suffered irreparable injury

3  to its business reputation and good will and has lost sales and profits in an amount not yet fully

4  ascertained.

5       74.    Mosaic has no adequate remedy at law and is entitled to preliminary and permanent

6  injunctive relief.

7       75.    Defendant's conduct complained of herein is malicious, fraudulent, knowing, willful,

8  and deliberate, entitling Mosaic to an accounting of Defendant's profits, increased damages, and

9  attorneys fees and costs incurred in prosecuting this action under 15 U.S.C. § 1117.

10
11  **SIXTH CLAIM FOR RELIEF**
**Unfair Competition**
**(Cal. Bus. & Prof. Code § 17200 *et seq.*)**

12
13       76.    Mosaic repeats and realleges each of the allegations contained in Paragraphs 1 through

14  75 as though fully set forth herein.  California Business & Professions Code Sections 17200 *et seq.*

prohibits all unfair, deceptive and unlawful business practices.

15
16       77.    Defendant's business practices alleged herein offend public policy as they are

17  deceptive, unlawful, unfair, unscrupulous, and substantially injurious to Mosaic and to consumers, and

thus constitute unfair competition and unfair business practices in violation of the California Business

18  & Professions Code Sections 17200 *et seq.* prohibiting unfair, unlawful and deceptive business acts.

19       78.    Pursuant to California Business and Professions Code Section 17203, Mosaic is

20  entitled to an order enjoining MTS's practices, and to an order of restitution.

21       79.    Without injunctive relief, Mosaic has no means by which to prevent Defendant from

22  continuing to deceive, confuse, and mislead customers regarding the reputation and goodwill of

23  Mosaic's business and its marks.  Mosaic is therefore entitled to injunctive relief prohibiting MTS

24  from continuing such acts of unfair competition and unfair business practices.

25
26  **SEVENTH CLAIM FOR RELIEF**
**Unfair Competition**
**(California Common Law)**

27
28       80.    Mosaic repeats and realleges each of the allegations contained in Paragraphs 1 through

1  79 as though fully set forth herein.

2        81.    The acts by Defendant herein alleged constitute passing off and unfair competition

3  under California common law.

4        82.    As a direct and proximate result of MTS's conduct as herein alleged, Mosaic has

5  suffered and will continue to suffer irreparable injury to its business reputation and good will and has

6  lost sales and profits in an amount not yet fully ascertained.

7        83.    Mosaic has no adequate remedy at law and is entitled to preliminary and permanent

8  injunctive relief.

9

10

11

12  **PRAYER FOR RELIEF**

13        WHEREFORE, Mosaic prays for relief against MTS as follows:

14        (1)    A declaratory judgment that the current use by Mosaic of Defendant's

15  Trademarks in connection with the authorized sale of Defendant's products does not infringe any

16  trademark owned by Defendant;

17        (2)    A declaratory judgment that the past use of Defendant's purported copyrights in

18  connection with the authorized sale of Defendant's products does not infringe any copyright owned by

19  Defendant;

20        (3)    Injunctive relief restraining the Defendant, its agents, servants, employees,

21  successors, and assigns, and all others in concert and privity with it, from bringing any lawsuit or

22  threat against Plaintiff of Copyright Infringement or Trademark Infringement or Dilution in

23  connection with Plaintiff's sale of products purchased through Defendant;

24        (4)    Damages according to proof;

25        (5)    Attorneys fees pursuant to 17 U.S.C. § 512 (f), other portions of the Copyright

26  Act including Section 505, on a private Attorney General Basis, or otherwise as allowed by law;

27        (6)    Plaintiff's costs and disbursements; and

28        (7)    Such other and further relief as the Court shall find just and proper.

1       Plaintiff hereby requests a jury trial for all issues triable by jury including, but not limited to,

2  those issues and claims set forth in any amended complaint or consolidated action.

3                              Respectfully submitted,

4                              TOWNSEND and TOWNSEND and CREW LLP

5

6  Dated:  August 29, 2007               By

7                              Paul W. Vapnek

8                              Judith M. Schvimmer
                                  Attorneys for Plaintiffs
                                  SUNSET MOUNTAINS, INC., d/b/a MOSAIC TILE

9                              MARKET

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

3      I hereby certify that on August 29, 2007, I served a copy of the following document entitled

4    **FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES** on

5    counsel for Defendant by depositing a true and correct copy of the same with the United States

6    Postal Service, first class mail, postage prepaid, in an envelope addressed to:

7
              Donald Morris, Esq.,
8             Nicholas T. Moraites, Esq.
              Dozier Internet Law, P.C.
9             301 Concourse Blvd.
              West Shore III, Suite 300
10            Glen Allen, VA   23059

11            *Attorneys for Defendant*

12

13                          *Eddie L. Shine*
                          _____
14                            Eddie L. Shine

15    61119892 v1

16

17

18

19

20

21

22

23

24

25

26

27

28

Sunset Mountains, Inc., d/b/a Mosaic Tile Market v. Mosaic Tile Supplies, LLC    Civil Action No. C 07 4007 (PJH)   16
FIRST AMENDED COMPLAINT FOR DECLARATORY JUDGMENT